UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ADRIA VIZZI HOLUB,<br><br>                       Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                      Defendant. | Case No. 2:15-cv-00706-RBL<br><br>ORDER REVERSING AND<br>REMANDING DEFENDANT'S<br>DECISION TO DENY BENEFITS |

Plaintiff Holub seeks judicial review of the denial of her application for supplemental security income ("SSI") benefits. For the reasons set forth below, the Comissioner's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

Holub protectively filed an application for SSI benefits on August 10, 2010, alleging she became disabled beginning February 19, 2004. *See* Dkt. 7, Administrative Record ("AR") 1181. Holub later amended the alleged onset date to October 1, 2010. *See id*. That application was denied upon initial administrative review on September 24, 2010, and on reconsideration on February 17, 2011. *See id.* A hearing was held before an administrative law judge, who denied benefits on August 30, 2012. *See* AR 1248-75. This Court reversed and remanded that decision for a reevaluation of Holub's mental impairments. *See* AR 1283-97. The ALJ held second

ORDER - 1

hearing June 12, 2014. Holub was represented by counsel, and she, her therapist, and a friend appeared and testified. *See* AR 1226-47.

In a decision dated March 5, 2015, the ALJ determined Holub to be not disabled. *See* AR 1181-96. It does not appear from the record that the Appeals Council assumed jurisdiction of the case. *See* 20 C.F.R. § 416.1484. On May 8, 2015, Holub filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 4

Holub argues the Comissioner's decision to deny benefits should be reversed and remanded for an award of benefits, or alternatively for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in evaluating Holub's credibility; (3) in assessing Holub's residual functional capacity ("RFC"); and (4) in finding her to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, the undersigned agrees the ALJ erred in evaluating the medical evidence in the record, and thus in assessing Holub's RFC and finding her capable of performing other work, and therefore in determining Holub to be not disabled. This matter is remanded for further administrative proceedings.

## DISCUSSION

The Commissioner's determination that a claimant is not disabled must be upheld if the "proper legal standards" have been applied, and "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Sec'y of Health and Human Services*, 839 F.2d

ORDER - 2

432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he ALJ's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the ALJ's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

### 1.   The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the

---

[1] The Ninth Circuit has further explained:

> It is immaterial that the evidence in a case would permit a different conclusion than that which the ALJ reached. If the ALJ's findings are supported by substantial evidence, the courts are required to accept them. It is the function of the ALJ, and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the ALJ's conclusions are rational. If they are, . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119, n.10.

ORDER - 3

medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson*, 359 F.3d at

ORDER - 4

1195; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

Holub asserts that the ALJ erred by giving little weight to the opinion of examining psychologist Benjamin Dobbeck, Psy.D. *See* Dkt. 11, pp. 3-9. The Court agrees.

Dr. Dobbeck performed a psychological evaluation of Holub on September 14, 2012. *See* AR 1127-34. On September 27, 2012, Dr. Dobbeck completed psychiatric review technique forms, including diagnoses, a rating of Holub's functional limitations, and a medical source assessment of Holub's mental functioning. *See* AR 1135-51. Ultimately, Dr. Dobbeck diagnosed Holub with major depressive disorder, dissociative identity disorder, posttraumatic stress disorder, and anorexia nervosa. *See* AR 1134. Dr. Dobbeck opined that Holub had marked difficulties in social functioning, including having difficulty more than 20 percent of the workday or workweek in interacting appropriately with the general public or getting along with coworkers. *See* AR 1145, 1151. Dr. Dobbeck opined that Holub was unable to perform workplace activities within a schedule, maintain regular attendance, be punctual within customary tolerances, or complete a normal workday or workweek without interruptions from psychologically-based symptoms. *See* AR 1150.

The ALJ gave Dr. Dobbeck's opinion little weight, stating that it was inconsistent with Holub's treatment history, performance on mental status examinations, and documented daily activities. *See* AR 1192. None of these reasons is supported by substantial evidence.

First, the ALJ broadly stated that Holub's primary care records "show that she was

ORDER - 5

consistently alert and cooperative with no social or cognitive deficits noted." *Id*. The record does not support this generalization. The Comissioner cites to instances in which Holub was found to be alert and cooperative. *See* Dkt. 15, pp. 6-7. However, these short notes regarding Holub's psychological presentation were taken by physicians treating Holub for physical impairments. *See* AR 1579, 1677, 1688, 1722. Reports by Holub's treating therapists consistently indicate severe social anxiety and impaired social interaction. *See*, *e.g.*, AR 1080, 1096-98, 1806-08, 2038-39. Importantly, Dr. Dobbeck himself stated, "Holub's pleasant, kind, and articulate exterior is clearly due to good socialization and can be disarming. Beneath that façade is significant and pervasive functional impairment." AR 1133. The claim that Dr. Dobbeck's opined social limitations can be discredited because of Holub's demeanor during treatment is not supported by substantial evidence.

      Next, the ALJ stated that Dr. Dobbeck's opinion was inconsistent with Holub's mental status examination ("MSE") results. *See* AR 1192-93. However, as stated by Dr. Dobbeck, the MSE is used to "detect gross cognitive impairment," of which Dr. Dobbeck found none. *See* AR 1130. Dr. Dobbeck opined that Holub had no limitations in understanding and memory. *See* AR 1150. These findings do nothing to discredit Dr. Dobbeck's separate opinion that Holub is markedly limited socially based on the observational interview and other objective personality testing.

      The ALJ also claimed that Holub's documented activities are inconsistent with Dr. Dobbeck's opined limitations. *See* AR 1192-93. First, the ALJ notes that Holub was able to graduate from school and work as a research assistant years prior to her alleged onset date and has not shown significant change or deterioration since that time. *See id*. However, the ALJ provides no legal support for the idea that a claimant must not only establish disability as of the

ORDER - 6

onset date but also establish a specific causal chain of deterioration that explains her former ability to perform certain activities. Regardless, Dr. Dobbeck had complete familiarity with Holub's educational history and still opined that Holub had marked limitations as of October of 2010. *See* AR 1128, 1135, 1145. Therefore, Dr. Dobbeck either believed that Holub was similarly impaired while gaining her education and was able to complete her degree despite the limitations, or he believed that Holub's condition had worsened since that time to explain his opined limitations from October of 2010 onward.

The ALJ then found Dr. Dobbeck's opined limitations inconsistent with Holub's social activities, including driving, volunteering at church, mentoring, and attending her appointments. *See* AR 1193. Dr. Dobbeck understood that Holub was capable of these activities for short periods in forming his opinion. *See* AR 1129. However, he ultimately opined that Holub would have social limitations in the workplace because "these abilities are fleeting." *See* AR 1149, 1151. Overall, the way these activities were performed is not inconsistent with the limitations in a full-time workplace assessed by Dr. Dobbeck, so substantial evidence does not support the ALJ discrediting his opinion for that reason. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical difference between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." (citations omitted in original)).

ORDER - 7

Finally, the ALJ mentioned that Dr. Dobbeck's opinion was based at least in part on Holub's self-report. *See* AR 1193. However, "[a] patient's report of complaints, or history, is an essential diagnostic tool," and "[a]ny medical diagnosis must necessarily rely upon the patient's history and subjective complaints." *Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir. 1997) (citation omitted). On top of the clinical interview, Dr. Dobbeck also performed several objective tests. *See* AR 1130. The ALJ presented no evidence demonstrating that Dr. Dobbeck relied more heavily on Holub's self-reports than the objective evidence. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion.") (citing *Ryan v. Comm'r, Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008)). Therefore, the ALJ erred by providing no specific and legitimate reason for discounting Dr. Dobbeck's opinion regarding Holub's mental limitations.[2]

The Ninth Circuit has recognized that "harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). "In each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* Courts in this Circuit adhere to "the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). Courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'"

---

[2] Dr. Dobbeck also opined that plaintiff would be "unable to hold down a job" because of her physical impairments. *See* AR 1133. The ALJ did not err in discrediting this part of Dr. Dobbeck's opinion because it is an ultimate opinion regarding plaintiff's disability, by which an ALJ is not bound. *See Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

ORDER - 8

*Id.* at 1118 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111) (codification of the harmless error rule)).

Had the ALJ fully credited the opinion of Dr. Dobbeck, the RFC would have included additional limitations, as would the hypothetical questions posed to the vocational expert. As the ALJ's ultimate determination regarding disability was based on the previous testimony of a vocational expert on the basis of an improper hypothetical question, these errors affected the ultimate disability determination and are not harmless.

### 2.   The ALJ's Assessment of Holub's RFC

The ALJ employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's RFC assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *See id.*

RFC thus is what the claimant "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *See id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and

ORDER - 9

restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ in this case found that Holub had the RFC to perform:

**sedentary work as defined in 20 CFR 416.967(a). She can work with superficial and limited public contact and superficial contact with coworkers.**

AR 1188 (emphasis in original). However, because as discussed above the ALJ erred in evaluating the opinion of Dr. Dobbeck, the ALJ's RFC assessment does not completely and accurately describe all of Holub's capabilities. Accordingly, the ALJ erred in this assessment as well.

### 3. The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines (the "Grids"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

ORDER - 10

Here, based on the testimony of a vocational expert at the previous hearing, the ALJ found Holub capable of performing other jobs existing in significant numbers in the national economy. *See* AR 1194-95. Again, however, because the ALJ erred in evaluating the opinion of Dr. Dobbeck and thus in assessing Holub's RFC, the hypothetical question presented at the previous hearing did not completely and accurately describe all of Holub's capabilities. Therefore, the ALJ's step five determination is not supported by substantial evidence and is in error.

### 4. This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

ORDER - 11

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Here, issues still remain regarding conflicts in the medical evidence, Holub's functional capabilities, and her ability to perform other jobs existing in significant numbers in the national economy despite additional limitations. Accordingly, remand for further consideration is the proper course.

## CONCLUSION

The ALJ improperly concluded Holub was not disabled. Accordingly, the Comissioner's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 9th day of February, 2016.

*/s/ Ronald B. Leighton*

Ronald B. Leighton
United States District Judge

ORDER - 12